## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

HENRY GONZALES and TIM DESCHAMPS,

        Plaintiffs,

                                     No. 1:22-cv-00525-WJ-SCY

    v.

NEW MEXICO DEPARTMENT OF HEALTH dba
NEW MEXICO BEHAVIORAL HEALTH INSTITUTE,
a state government agency, and SUSIE ARCHULETA,
Long-term Care Director, JEREMY GONZALES, Activity Director,
H.C. HAWKINS, Deputy Hospital Administrator,
ALBERTA LUCERO, Admissions Director, and
KIMBERLY VILLANUEVA, FMLA Administrator,
each in their individual capacities,

        Defendants.

### <u>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS</u>

**THIS MATTER** is before the Court on Defendants' Partial Motion to Dismiss Claims Contained in Plaintiffs' First Amended Complaint. In Defendants' motion, they move for the dismissal of Counts I, III, IV, and VII of Plaintiffs' First Amended Complaint.[1] Having reviewed the relevant pleadings of the parties and the applicable law, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss (**Docs. 6**) as follows: **Count I**: Mr. Deschamps's breach of contract claim survives, but Mr. Gonzales's claim is dismissed without prejudice; **Count III**: Plaintiffs do not oppose the dismissal of their Fraud Against Taxpayers Act claims; **Count IV**: Mr. Deschamps's Whistleblower Protection Act claim survives, but Mr. Gonzales's claim is

---

[1] Plaintiffs' First Amended Complaint is the operative complaint. The Complaint lists nine causes of action. For concision, the Court refers to Plaintiffs' causes of action as "counts."

dismissed with prejudice; and **Count VII**: Plaintiffs' claims under the New Mexico Tort Claims Act are dismissed with prejudice.

## BACKGROUND

Plaintiffs Tim Deschamps and Henry Gonzales bring nine claims against Defendants New Mexico Department of Health ("NMDOH"), doing business as New Mexico Behavioral Health Institute ("NMBHI"), as well as five individually named employees of NMDOH. Plaintiffs were both employed by NMDOH and worked at NMBHI. At the time of their termination, Mr. Gonzales worked as a Psychiatric Technician-Advanced in the Tesuque Unit, and Mr. Deschamps worked as a Recreational Therapist Operational in the Juniper One Unit. **Doc. 1, Ex. A (First Amended Complaint) ¶¶ 1, 2**. Each Plaintiff had worked continuously for NMDOH for over 15 years at the time of their terminations. *Id.* **¶ 15**. The facts of each Plaintiff's termination differ, but Plaintiffs contend their cases share a common issue: "the long-term danger to Defendant DOH's patients, employees, and taxpayers presented by Defendant DOH's on-going and regular failure to maintain adequate staffing at the facility as a whole, and its abandonment of the typical employer practice of making new hires to cover the shifts of exiting employees." *Id.* **¶ 14**.

### I.    Mr. Deschamps's Allegations

Mr. Deschamps was terminated after the death of a patient in November 2019. *Id.* **¶ 16**. According to Plaintiffs, Defendants "blamed Mr. Deschamps for killing a patient." *Id.* **¶ 25**. Mr. Deschamps alleges "the patient rolled unannounced into a room where Plaintiff Deschamps was setting up supervised snacks for other patients." *Id.* "Plaintiff Deschamps briefly answered a work-transportation phone call outside when the patient choked to death by stuffing in excess of seven handfuls of Vanilla Wafer cookies into his mouth in four minutes." *Id.* The Complaint alleges, "Plaintiff Deschamps was unaware of the immediate issue because of the seven minute phone call, and was unaware that the now-deceased patient had been transferred from the Juniper

2

Unit to the Ponderosa Unit (the day before)." *Id.* Plaintiff Deschamps was also unaware that the "patient was transferred back from the Ponderosa Unit because the Pondera Unit, suffering from a similar lack of employees, had stated they were unable to safely care for the patient." *Id.* Plaintiffs allege the patient should have been on round-the-clock supervision. *Id.* ¶¶ **11, 18, 20.**

According to the Complaint, Mr. Deschamps "was a 15-year veteran of NMBHI" and "had no on-going discipline problems at the time of the termination." *Id.* ¶ **20.** Plaintiffs allege Mr. Deschamps was terminated because of Defendants' "bad faith investigation of the patient's death." *Id.* As part of Defendants' investigation into the patient's death, Mr. Deschamps alleges he complained to Defendants on December 3, 2019. *Id.* ¶ **11.** Specifically, Mr. Deschamps claims he complained that the patient who died had previously been on "a level"—i.e., round-the-clock supervision—but had been taken off a level by Defendant NMDOH. *Id.*[2] Mr. Deschamps alleges he told Defendants he believed the patient should have remained on a level, especially because of a previous choking incident where a nurse had saved the patient from choking. According to Mr. Deschamps, he "compelling[ly] established during [this] governmental investigation . . . that the deceased patient should have been on a Level One, and would have been on a Level One, but for the Defendants' insistence on chronically under-staffing NMBHI." *Id.* ¶ **25.** Mr. Deschamps alleges he made this complaint a month before he received a Notice of Contemplated Dismissal. *Id.* ¶¶ **11, 23**.

Plaintiffs allege Mr. Deschamps responded fully and timely to the Notice of Contemplated Dismissal on January 17, 2020, by emailing a copy of his Response to the then-Hospital

---

[2] Plaintiffs' Complaint uses the terms "a level" and "a level one." The Court is unclear whether these terms both mean round-the-clock-care or whether the two terms are the product of a typo. To stay true to Plaintiffs' allegations, the Court uses the two different terms as they appear in the First Amended Complaint.

Administrator, to NMBHI's Human Resources Director, to Mr. Deschamps' immediate supervisor, and to the Long-Term Care Director. *Id.* ¶ **23**. Although the Complaint acknowledges the email sent to the Long-Term Care Director bounced back indicating a wrong address, Plaintiffs allege the other emails were received as evidenced by the fact that Mr. Deschamps received an automatic response from the Hospital Administrator stating that she would be out for the Martin Luther King Jr. holiday. *Id.* Despite Mr. Deschamps's alleged response, Defendants claimed he "did not respond orally or in writing following his . . . receipt of the Notice of Contemplated Dismissal" in his Notice of Final Action Dismissal. *Id.* ¶ **23**. Thus, Plaintiffs allege, Mr. Deschamps's "Response to Proposed Termination, though timely delivered was knowingly ignored by Defendants." *Id.* ¶ **47**.

## II.     Mr. Gonzales's Allegations

Defendants allegedly terminated Plaintiff Gonzales's "long-term position with the Defendant DOH on or about February 23, 2021." *Id.* ¶ **24**. At the time of his termination, Mr. Gonzales "was a long-term tenured employee of the Defendants." *Id.* According to the Complaint, "The stated reasons for Plaintiff Gonzales' termination was that he 'failed to work a mandated overtime shift and [had] been Absent without Leave (AWOL) four (4) times within a 12-month period." *Id.* However, Plaintiff Gonzales claims he was wrongfully demoted and then wrongfully terminated. Plaintiffs allege Mr. Gonzales has had a disability since a knee surgery in 2018. *Id.* ¶ **27**. Plaintiffs also allege Defendants failed to comply with the Family Medical Leave Act (FMLA) and his FMLA Certificate, which specified he could not work more than 48 hours a week. *Id.* ¶¶ **27, 103-109**.

In July 2020, Mr. Gonzales alleges he was "demoted," when he was transferred to the Tesuque Unit because the Arches Unit shut down. *Id.* ¶¶ **30, 32**. Upon hearing of his transfer, Mr.

4

Gonzales alleges he "became concerned" because "he knew from past experience that the Tesuque Unit was more physical than his prior work supervising Arches." *Id.* ¶ **30**. At this time, Mr. Gonzales "told Defendant Hawkins of that concern, and pointed out that he had had knee surgery in 2018" and had been on intermittent FMLA leave related to the surgery for two-and-a-half years. *Id.* Plaintiffs allege his transfer to Tesuque was a demotion and that he was "never told by anyone at NMBHI that the transfer was a demotion." *Id.* Plaintiffs allege that although Mr. Gonzales's title and duties changed, his pay did not. *Id.*

According to Mr. Gonzales, Defendant Villanueva "told him his FMLA leave would last until April" of 2021. *Id.* ¶ **40**. However, Mr. Gonzales was terminated on or about February 23, 2021, for failing to work a mandatory overtime shift and being Absent without Leave (AWOL) four times within a 12-month period. *Id.* Mr. Gonzales is unable to account for his lack of leave. The Complaint alleges Mr. Gonzales was entitled to "12 work weeks of unpaid leave to use in a year" under the FMLA statute. *Id.* ¶ **41**. After his proposed termination, Mr. Gonzales requested documentation of his FMLA time used. *Id.* Defendants provided him with records showing his "FMLA Mandatory Overtime" at 59 hours and 40 minutes by February 12, 2021, and his "Family Medical Leave Sick" at 16 hours. *Id.* According to Plaintiffs, this record showed less than two weeks of used FMLA leave during the 6-month period before Mr. Gonzales's termination. *Id.*

When Mr. Gonzales received notice of his contemplated dismissal on February 5, 2021, he filed a written response. *Id.* ¶ **13**. In his response, Mr. Gonzales claimed Defendants did not "have enough employees." *Id.* Mr. Gonzales also claimed that he had the "right to work an intermittent leave schedule" and that "NMBHI daily asks him to exceed his FMLA agreement for months at a time." *Id.* Mr. Gonzales also threatened litigation. *Id.* He was terminated on February 23, 2021. *Id.*

Plaintiffs bring nine claims in their voluminous First Amended Complaint. Defendants' Motion to Dismiss only challenges four of the nine counts.

## DISCUSSION

### I.   Count One: Breach of Contract

Plaintiffs Deschamps and Gonzales bring breach of contract claims against Defendant NMDOH. Plaintiffs claim NMDOH breached their employment contracts by terminating them without proper cause. Defendants move to dismiss Count One on the grounds that Plaintiffs failed to exhaust their administrative remedies under the New Mexico Personnel Act by not appealing their termination to the New Mexico Personnel Board within thirty days of their termination as required by NMSA 1978, § 10-9-18(1) ("An employee who is dismissed, demoted or suspended may, within thirty days after the dismissal, demotion or suspension, appeal to the board."). To support their position, Defendants cite to *Barreras v. State of New Mexico Corrections Department*, where the New Mexico Court of Appeals held:

> the State Personnel Act provides the exclusive remedy for Plaintiffs' breach-of-contract claims based on that same Act. Thus, Plaintiffs were required to proceed administratively before the [State Personnel Board]. Having declined to appeal their dismissal from the [State Personnel Board], Plaintiffs are barred from obtaining further relief from the courts.

2003-NMCA-027, ¶ 21, 62 P.3d 770, 775.

Plaintiffs contend they are excused from the exhaustion requirement because exhaustion is not required when a defendant provides an "unfair or incomplete" pre-termination hearing. **Doc. 12 at 8**. Mr. Deschamps alleges he is excused because "Defendants violated and invalidated any due process proceedings by pre-emptively breaching due process by ignoring Plaintiff Deschamps' Pre-Termination Response, despite its timely delivery." **Complaint ¶ 47**. Mr. Gonzales alleges he too is excused because he "was demoted without any notice or required due process." ***Id.***

6

The Court concludes Mr. Deschamps has alleged sufficient facts to excuse him from administrative exhaustion; thus, his breach of contract claim survives. However, Mr. Gonzales has not, and the Court dismisses his claim without prejudice for failure to exhaust.

### A.    Failure to Exhaust in Not Jurisdictional under the Personnel Act.

As a threshold matter, Defendants' motion begs the question whether administrative exhaustion under the New Mexico Personnel Act is jurisdictional or not. The answer to this question dictates what documents the Court can consider when reviewing Defendants' motion. A jurisdictional challenge under Rule 12(b)(1) allows the Court to look beyond the complaint. In contrast, a Rule-12(b)(6) challenge requires the Court to confine its inquiry to the complaint's four corners. Defendants request dismissal of Plaintiffs' claims under both Rule 12(b)(1) and 12(b)(6). Defendants contend that failure to exhaust administrative remedies under the New Mexico Personnel Act is a jurisdictional defect. **Doc. 7 at 3**. The Court disagrees. Because New Mexico courts have repeatedly found a plaintiff's failure to exhaust their administrative remedies can be excusable, *see e.g., Franco v. Carlsbad Municipal Schools*, 2001-NMCA-042, 28 P.3d 531, and *Alarcon v. Albuquerque Public Schools Board of Education*, 2018-NMCA-021, 413 P.3d 507, the Court concludes administrative exhaustion under the State Personnel Act is not jurisdictional.

This holding is also in line with the greater trend in federal law to move away from holding administrative exhaustion to be jurisdictional. *See e.g.*, *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018) (en banc) (holding "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim"); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 (2010) ("We thus conclude that § 411(a)'s registration requirement is nonjurisdictional . . . ."); *Jones v. Bock,* 549 U.S. 199, 211 (2007)

(treating the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 as an affirmative defense). Because the Court concludes administrative exhaustion under the State Personnel Act is not jurisdictional, the Court will exclude and not consider the additional evidence submitted by Plaintiffs and Defendants and instead confine its review to Rule 12(b)(6) and the four corners of Plaintiffs' First Amended Complaint.

### B.     Rule 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When assessing plausibility, a plaintiff's allegations are 'read in the context of the entire complaint.'" *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (citation omitted). Under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). However, the Court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### C.     Mr. Deschamps's Breach of Contract Claim Survives.

Defendants contend Plaintiff Deschamps's breach of contract claim should be dismissed because he failed to exhaust his administrative remedies under the New Mexico Personnel Act. Mr. Deschamps disagrees, arguing he should be excused from the requirement to exhaust his administrative remedies because NMDOH "explicitly ignor[ed] Plaintiff Deschamps' properly and

timely delivered Response to Notice of Contemplated Action, thereby fraudulently destroying his right to a pre-termination due process hearing." **Doc. 12 at 10**.

In the Notice of Final Action Dismissal, Defendants are alleged to have asserted that Mr. Deschamps "did not respond orally or in writing following his . . . receipt of the Notice of Contemplated Dismissal." **Complaint ¶ 23**. But, according to Plaintiffs, Mr. Deschamps responded fully and timely to the Notice of Contemplated Dismissal on January 17, 2020, by emailing a copy of his Response to the then-Hospital Administrator, to NMBHI's Human Resources Director, to Mr. Deschamps' immediate supervisor, and to the Long-Term Care Director. *Id.* **¶ 23**. According to the Complaint, "Plaintiff Deschamps' Response to Proposed Termination, though timely delivered was knowingly ignored by Defendants." *Id.* **¶ 47**. Thus, Plaintiffs claim, "Any requirement of exhaustion of internal remedies is met because the Defendants violated and invalidated any due process proceedings . . . by ignoring Plaintiff Deschamps' Pre-Termination Response, despite its timely delivery." *Id.* The four corners of the Complaint contain no allegations as to whether Mr. Deschamps was notified of his right to appeal the termination to the Personnel Board.

Faithfully applying the Rule-12(b)(6) standard, the Court concludes the Complaint contains sufficient facts to excuse Mr. Deschamps from administratively exhausting his breach of contract claim. Plaintiffs cite to several New Mexico cases to support their position; the Court finds *Franco v. Carlsbad Municipal Schools*, 2001-NMCA-042, 28 P.3d 531, and *Alarcon v. Albuquerque Public Schools Board of Education*, 2018-NMCA-021, 413 P.3d 507, instructive.

In *Franco*, plaintiff was employed by the school district as a custodian. 28 P.3d at 533. The school district gave the custodian a written notice that his termination had been recommended to the Board, but no one informed him that the Board would meet to consider his termination or that

he could attend this meeting and provide the Board with his version of events. *Id.* The custodian did not attend this pre-termination meeting. *Id.* After he was terminated, the custodian's wife wrote a letter requesting an explanation for her husband's termination. *Id.* The custodian called a supervisor to ask where to send the letter. *Id.* The supervisor told him there was nothing he could do; the custodian never sent the letter. *Id.* Subsequently, the custodian filed a wrongful termination suit in district court and prevailed. *Id.* 533-34.

On appeal, the school district argued the custodian should not have been permitted to file in district court because he failed to exhaust his administrative remedies by appealing his termination to an independent arbitrator. The New Mexico Court of Appeals held the custodian was not required to exhaust his remedies because the school district's "own procedures successfully thwarted any possible effort by [custodian] to utilize available administrative procedures." *Id.* at 535. As to the denial of his pre-termination process, the Court concluded "substantial evidence supports the trial court's finding that [custodian] was not appropriately informed of the . . . Board meeting," *id.*, and the school district's "inconsistent, conflicting, and incomplete message imparted to [custodian] decreased the likelihood he would appear at a hearing, either with or without counsel, to explain his side of the story," *id.* at 536. As to the denial of his post-termination process, the Court held there was no evidence the custodian had been informed of his appeal right; in fact, there was evidence the custodian's supervisor had actively discouraged him from doing anything. *Id.* at 535. Because the custodian was not afforded "the mandatory pre-termination or post-termination process to which he was entitled," the New Mexico Court of Appeals concluded the custodian need not exhaust his administrative remedies. *Id.* at 536.

The New Mexico Court of Appeal's decision in *Franco* suggests that when a plaintiff is deprived of pre- and post-termination remedies, a statutory requirement to exhaust administrative

remedies can be excused. The case at bar raises a slightly different question: whether deprivation of only pre-termination process may excuse a plaintiff from administrative exhaustion. For this issue, the *Alarcon* case is especially helpful. In *Alarcon*, the Albuquerque Public Schools (APS) notified Teacher of its intent to terminate his employment. 413 P.3d at 514. Teacher was also notified that he had a right to appeal this discharge by requesting a pre-termination hearing. *Id.* Teacher requested a hearing, and APS scheduled one before the assistant superintendent. *Id.* Teacher objected on the grounds that, under the applicable statute, he was entitled to a discharge hearing before the school board, not the superintendent. *Id.* Teacher refused to appear at the hearing and instead obtained a writ of mandamus from the district court directing APS to hold a discharge hearing before the school board. *Id.* APS appealed the writ of mandamus, arguing in part that the writ was inappropriate because Teacher failed to exhaust his administrative remedies before seeking relief in district court. *Id.* at 515. Specifically, APS contended Teacher should have attended the hearing in front of the superintendent and then appealed any adverse decision to an independent arbitrator, who would hear the case de novo. *Id.* at 519.

The New Mexico Court of Appeals was not persuaded: "No de novo appeal before an independent arbitrator, and from there, to the district court, will restore Teacher to the substantive and procedural right to a discharge hearing before the school board provided by [statute]." *Id.* The Court explained, the "constitutional right to a pre-termination hearing afforded all school employees . . . includes the right of an employee to present his or her side of the case because of its obvious value in reaching an accurate decision on a proposed termination." *Id.* According to the Court, pre-termination hearings are especially important because in many cases "the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.* at 519-20. Thus, the *Alarcon* Court permitted Teacher to seek relief

in the district court without first exhausting all administrative remedies because APS denied him pre-termination process.

Although neither *Franco* nor *Alarcon* deal specifically with the New Mexico Personnel Act, both cases suggest that under New Mexico law a plaintiff who is denied pre-termination process is excused from exhausting his administrative remedies. Defendants read *Franco* and *Alarcon* differently. According to Defendants, these cases should be read as standing for the proposition that administrative exhaustion may be excused only when a "governmental defendant was alleged to have misled or otherwise impeded the employees' ability to pursue *a post-termination* hearing." **Doc. 14 at 5 (emphasis added).** The Court disagrees with Defendants' narrow reading of New Mexico's caselaw. In *Alarcon*, the New Mexico Court of Appeals emphasized the importance of pre-termination process because in many cases "the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be *before* the termination takes effect." 413 P.3d at 519-20 (emphasis added). And in *Alarcon*, the Court of Appeals permitted the teacher to seek relief in the district court without first appealing his termination to the neutral arbitrator.

Although neither *Alarcon* nor *Franco* are exactly on point, these cases both suggest exhaustion can be excused based on the denial of pre-termination process alone. Like the plaintiffs in *Alarcon* and *Franco*, Mr. Deschamps alleges he was denied pre-termination process by his employer NMDOH. Taking the Complaint's allegations as true and viewing them in the light most favorable to Plaintiffs, Mr. Deschamps timely responded to NMDOH's Notice of Contemplated Dismissal via email to four of his superiors, but NMDOH ignored his response and proceeded to terminate him in part because he "did not respond orally or in writing following his . . . receipt of the Notice of Contemplated Dismissal." **Complaint ¶ 23**. At this early stage in the proceedings,

the Complaint contains sufficient facts to support Mr. Deschamps's claim that he should be excused from administratively exhausting his breach of contract claim.

**D.      Mr. Gonzales's Breach of Contract Claim Is Dismissed without Prejudice.**

Mr. Gonzales also claims NMDOH breached his employment contract by terminating him without proper cause. Defendants move to dismiss Mr. Gonzales's breach of contract claim for failure to exhaust. Plaintiffs contend Mr. Gonzales is also excused from exhausting his remedies because he "was demoted without any notice or required due process." **Complaint ¶ 47**. The Court is not persuaded. Even assuming Mr. Gonzales was demoted—which is not clear from the facts alleged in the Complaint—neither *Franco* nor *Alarcon* support excusing Mr. Gonzales from exhausting his remedies. According to the Complaint, Mr. Gonzales was "demoted" in July of 2020, when he was transferred to the Tesuque Unit because the Arches Unit shut down. *Id.* **¶¶ 30, 32**. This alleged demotion took place six months before he was issued a notice of proposed termination in January of 2021. *Id.* **¶ 40**. Plaintiffs contend Mr. Gonzales was denied a hearing for his "non-disciplinary demotion" and that somehow this denial should excuse his failure to administratively exhaust his later termination. **Doc. 12 at 9.**

According to the Complaint, Mr. Gonzales's transfer to the Tesuque Unit "resulted in a long string of actions—representing breaches of contract, interference and retaliation pursuant [to] the FMLA statute, violations of constitutional due process and systemic discrimination—all of which culminated in the Defendants terminating his employment a little more than six months after the transfer." **Complaint ¶ 30**. Plaintiffs claim that although the "demotion" did not change Mr. Gonzales's pay, it "directly caused Plaintiff Gonzales['s] termination (as his job duties went from sedentary and occasionally helping out when the Psych Techs were over-worked)" and that it "may

13

have helped Defendants terminate him as his Position Description and resulting job duties changed." *Id.*

The causal chain Plaintiffs attempt to construct to excuse Mr. Gonzales from administrative exhaustion is too tenuous, speculative, and conclusory. In other words, the allegations supporting Plaintiffs claim that Mr. Gonzales should be excused from exhausting his breach of contract claim are implausible under Rule 12(b)(6). Like Mr. Deschamps, Mr. Gonzales alleges he responded to the Notice of Contemplated Action – Dismissal. **Complaint ¶ 13**. But unlike Mr. Deschamps, Mr. Gonzales does not allege that Defendants failed to consider his response or that he was denied pre- or post-termination process in relation to his termination. Even viewing the allegations in the light most favorable to Plaintiffs, nothing in the Complaint suggests Mr. Gonzales should be excused from administratively exhausting his breach of employment contract claim because Defendants failed to provide him with a hearing or opportunity to challenge his transfer to another unit—six months before he was terminated. The Court dismisses Mr. Gonzales's breach of contract claim without prejudice for failure to exhaust. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice.") (original emphasis).

## II.    Count Three: New Mexico's Fraud Against Taxpayers Act

Plaintiffs do not oppose the dismissal of their claims under New Mexico's Fraud Against Taxpayers Act. **Doc. 12 at 13.** Therefore, the Court dismisses these claims with prejudice.

## III.    Count Four: New Mexico's Whistleblower Protection Act

Plaintiffs bring claims under New Mexico's Whistleblower Protection Act ("WPA"), NMSA 1978, § 10-16C-3(A)-(C), against NMDOH. Plaintiffs claim, "The actions, refusals to act and testimony provided by Plaintiffs in the course of official investigations and as internal complaints of illegal actions by DOH constitute protected whistleblower conduct." **Complaint**

¶ **68**. And Plaintiffs allege NMDOH retaliated against them because of Plaintiffs' protected whistleblower conduct. *Id.* ¶ **69**.

### A.      The Whistleblower Protection Act

New Mexico's WPA makes it unlawful for a public employer to take any retaliatory action against a public employee who engages in three types (or "prongs") of conduct:

> A.  communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act;
>
> B.  provides information to, or testifies before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act; or
>
> C.  objects to or refuses to participate in an activity, policy or practice that constitutes an unlawful or improper act.

NMSA 1978, § 10-16C-3 (2010). Plaintiff Deschamps argues his allegations fall under the first or second WPA prong; Plaintiff Gonzales contends his allegations fall under prong three.

Defendants urge the dismissal of Plaintiffs' WPA claims for two reasons: (1) the Complaint fails to specify which communications Plaintiffs contend are protected under the WPA; and (2) to the extent, Plaintiffs' communications relate to complaints about their own working conditions, these complaints fall outside WPA's protection. Defendants' first argument is unavailing. While Plaintiffs' Fourth Cause of Action does not specify the alleged protected communications, the Court is able to discern the operative communications Plaintiffs appear to rely on by reading the Complaint as a whole. *Chilcoat*, 41 F.4th at 1207 (A plaintiff's allegations are "read in the context of the entire complaint."). However, to address Defendants' second argument, the Court must analyze each Plaintiff's WPA claim separately because each relies on different communications.

15

### B.      Mr. Deschamps's WPA Claim Survives.

Plaintiffs contend the facts underlying Mr. Deschamps's termination fall under both the first and second WPA prongs. For a first-prong WPA claim, Mr. Deschamps must allege facts to support that he communicated to his public employer, NMDOH, "about an action or a failure to act that [he] believes in good faith constitute[d] an unlawful or improper act" and that he was retaliated against as a result. § 10-16C-3(A). To state a second-prong WPA claim, Mr. Deschamps must allege facts that support that he "provide[d] information to, or testifie[d] before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act" and that he was retaliated against as a result. § 10-16C-3(B). Mr. Deschamps's allegations are sufficient to state a claim under either prong.

Mr. Deschamps alleges he complained to Defendants on December 3, 2019, during the investigation into the patient's death. Specifically, Mr. Deschamps claims he complained that the patient who died had previously been on "a level"—i.e., round-the-clock supervision—but had been taken off a level by Defendant NMDOH because of staffing shortages. Mr. Deschamps alleges he told Defendants he believed the patient should have remained on a level, especially because of a previous choking incident involving that patient. Mr. Deschamps alleges he made this complaint a month before he received his Notice of Final Action – Dismissal from Defendants. *Id.* ¶¶ 11, 23. These allegations are sufficient for Mr. Deschamps's WPA claim to survive.

### C.      Mr. Gonzales's WPA Is Dismissed with Prejudice.

Defendants contend Mr. Gonzales's WPA claim should be dismissed under Rule 12(b)(6) because Mr. Gonzales fails to allege facts suggesting that his objection or refusal to participate in an unlawful or improper act—here, working more than 48 hours a week in violation of his FMLA

agreement—"benefit[ed] the public or pertain[ed] to matters of public concern" as required by *Wills v. Bd. of Regents of Univ. of New Mexico*, 2015-NMCA-105, ¶ 20, 357 P.3d 453, 457.[3]

In *Wills*, the New Mexico Court of Appeals held that, like the federal whistleblower protection act, New Mexico's Whistleblower Protection Act requires that a whistleblowing act "benefit the public or pertain to matters of public concern." *Id.* In coming to this conclusion, the Court of Appeals distinguished between whistleblowing "that benefits the public by exposing unlawful and improper actions by government employees" and "communications regarding personal personnel grievances that primarily benefit the individual employee." *Id.* The Court of Appeals held only the former was protected. *Id.*

Plaintiffs attempt to avoid *Wills* by arguing that the holding in *Wills*—that whistleblowing must benefit the public, not only the individual employee—is limited to first-prong cases. Thus, Mr. Gonzales contends that the public-benefit requirement does not come into play here because he alleges a third-prong case. To support this argument, Plaintiffs rely on the unpublished case *Billy v. Curry Cnty. Bd. of Cnty. Commissioners*, No. A-1-CA-36071, 2020 WL 2096097 (N.M. Ct. App. Apr. 9, 2020), where the New Mexico Court of Appeals explained the three different prongs (claims) under the WPA.

In *Billy*, the plaintiff had received a jury verdict in his favor on his third-prong WPA claim; in other words, the jury found he had objected to or refused to participate in an activity, policy, or practice that constituted an unlawful or improper act and that he had been retaliated against for

---

[3] Defendants also raises for the first time in their Reply Brief the question of whether Mr. Gonzales's WPA claim may be pre-empted by the FMLA. **Doc. 14 at 8 n.1**. The Court will not address arguments raised for the first time and only briefly in Reply. *In re: Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1113 (10th Cir. 2017) ("[A]rguments raised for the first time in a reply brief are waived.").

doing so. *Id.* ¶¶ 5, 6. On appeal, defendants argued insufficient evidence had been presented at trial to support the jury's verdict.

As Plaintiff Gonzales points out, the third-prong jury instructions that were given in *Billy* did not include a requirement that the objection or refusal be in the public benefit. While that is technically true, Plaintiffs' argument is unavailing because in *Billy* neither party objected to the instructions; thus, the Court of Appeals accepted them as the law of the case and did not critically analyze the instructions. Nothing in *Billy* suggests the public-benefit requirement in *Wills* should only apply to first-prong cases. On the contrary, the Court concludes the public-benefit requirement articulated in *Wills* applies to all claims brought under the WPA.

Having so concluded, the Court proceeds to the question of whether Mr. Gonzales alleged a WPA claim "that benefits the public by exposing unlawful and improper actions by government employees" or whether Mr. Gonzales's objection or refusal to work overtime constitutes a "personal personnel grievance[] that primarily benefit[s] the individual employee." *Wills*, 2015-NMCA-105, 357 P.3d at 457. In *Wills*, the plaintiff worked as a doctor for the University of New Mexico. *Id.* at 454. Pursuant to a two-year employment contract, the University agreed to pay the doctor a base salary plus a supplemental salary. *Id.* After two years, the contract expired, but the University continued to pay the doctor the supplemental salary for four more years. *Id.* Then, the University stopped paying the supplemental salary. *Id.* The doctor filed an initial action for breach of contract and breach of covenant of good faith and fair dealing. *Id.* 454-55. Four days after the University was served with doctor's initial complaint, the University terminated his employment. *Id.* at 455. The doctor then brought another action for violation of the WPA, among other claims. *Id.* The Court held that the doctor's filing of the initial breach of contract claim did not constitute a protected whistleblowing activity under the WPA. *Id.* at 458.

Like the plaintiff's grievance in *Wills*, Mr. Gonzales's grievance is a personal personnel grievance rather than an act of whistleblowing for the benefit of the public. Thus, Mr. Gonzales's objections to working overtime in violation of his FMLA agreement do not qualify as whistleblowing activities. The Court dismisses Mr. Gonzales's WPA claim with prejudice.

## IV.     Count Seven: New Mexico's Tort Claims Act

Plaintiffs each bring claims for Negligent Creation and Maintenance of a Dangerous Condition in the Operation of a Public Building under the New Mexico Tort Claims Act ("NMTCA"). Defendants move for the dismissal of Plaintiffs' NMTCA claims for three independent reasons: (1) Plaintiffs failed to provide notice to the State's Risk Management Division as required by the Act; (2) the facts alleged in the Complaint do not fall within NMTCA's waiver of immunity because Plaintiffs themselves did not suffer physical, financial, or emotional harm as a result of the "dangerous condition" of a building; and (3) the NMTCA's waiver of immunity does not include employment-based claims.

As to Defendants' first argument that Plaintiffs failed to provide notice as required by the NMTCA, Plaintiffs responds that this case is an actual notice case—therefore, they were not required to file a notice before filing suit. For their position, Plaintiffs cite the NMTCA:

> No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, ***or unless the governmental entity had actual notice of the occurrence***.

NMSA 1978, § 41-4-16 (1977) (emphasis added). However, Plaintiffs admit "the Complaint never fully specifies the 'actual notice' of the dangerous condition." **Doc. 12 at 21.** Accordingly, Plaintiffs request to amend their Complaint to add allegations on actual notice. *Id.* **at 21-22.** The Court need not determine whether actual notice was alleged because even assuming Defendants

had actual notice, Plaintiffs' allegations fail to state a claim under the NMTCA, and amendment would be futile.

**A.      NMTCA Section 41-4-6: Liability; buildings, public parks, machinery, equipment and furnishings**

Section 41-4-6 of the NMTCA provides a waiver of sovereign immunity "for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." NMSA 1978, § 41-4-6(A) (2007). Plaintiffs attempt to fit what are in essence wrongful termination claims under this provision of the NMTCA. The Court is not persuaded.

**B.      Plaintiffs Fail to State a Claim under NMTCA.**

In their First Amended Complaint, Plaintiffs allege extensive facts regarding the understaffing of NMBHI and the numerous ways this allegedly affected the health and safety of patients and employees alike. **Complaint ¶¶ 88-100.** Plaintiffs request to amend their Complaint to add allegations that "the chronic understaffing of NMBHI was the specific proximate cause of the Proposed Terminations" of Mr. Deschamps and Mr. Gonzales. **Doc. 12 at 22**. The Court cannot see how the allegations in the current complaint or Plaintiffs' proposed amendments support a plausible claim under the NMTCA. Fundamentally, Plaintiffs claims are employment claims. The harm Plaintiffs allegedly suffered was termination. The cause of this alleged harm was their public employer's decision to terminate them—not the negligent "operation or maintenance" of a public building. § 41-4-6(A).

Plaintiffs cites three NMTCA cases they claim "precisely echo" this case. **Doc. 12 at 23.** The Court finds each of these cases distinguishable for the simple reason that in each case the dangerous condition *caused* the plaintiff's injury. *See Leithead v. City of Santa Fe*, 1997-NMCA-

041, 940 P.2d 459 (upholding NMTCA claim for negligently operating a swimming pool when six-year-old plaintiff nearly drowned due to lack of adequate number of trained lifeguards); *Armijo v. Bd. of Cnty. Commissioners of the Cnty. of Socorro*, No. CV 20-355 GBW/SMV, 2021 WL 1176317 (D.N.M. Mar. 28, 2021) (upholding NMTCA claim when inmate committed suicide and public employees knew inmate had suicidal ideations but did nothing); *Prewitt v. Los Lunas Sch. Bd. of Educ.*, No. A-1-CA-37641, 2020 WL 3078505, at *4 (N.M. Ct. App. June 9, 2020) (upholding NMTCA based on plaintiff's allegations that school had negligently created dangerous condition by failing to provide spotters in high school weight room, which resulted in plaintiff's finger being crushed under weight). Unlike these cases, the dangerous condition of understaffing at NMBHI cannot plausibly be said to have caused Plaintiffs' terminations. In the words of Defendants, the NMTCA was "not intended to allow an employee to bring a cause of action based on issues arising in the employment relationship merely because they have occurred within a public building, which will always be the case in an employment-based claim." **Doc. 7 at 9**. The Court dismisses Mr. Deschamps's and Mr. Gonzales's NMTCA claims with prejudice.

## CONCLUSION

For the reasons discussed, the Court **GRANTS** Defendants' Partial Motion to Dismiss as to Mr. Gonzales's breach of contract claim but **DENIES** it as to Mr. Deschamps's claim; the Court **GRANTS** Defendant's Motion as to Mr. Gonzales's Whistleblower Protection Act claim but **DENIES** it as to Mr. Deschamps's; and the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiffs' Fraud Against Taxpayers Act and New Mexico Tort Claims Act claims.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE