IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HENRY GONZALES and TIM DESCHAMPS,

    Plaintiffs,

vs.                                                                 Civ. No. 22-525 WJ/SCY

NEW MEXICO DEPARTMENT OF HEALTH dba
NEW MEXICO BEHAVIORAL HEALTH
INSTITUTE et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR PROTECTIVE ORDER AND DENYING WITHOUT PREJUDICE MOTIONS TO COMPEL

        Defendants filed a motion for a protective order against discovery served and depositions noticed by Plaintiff Tim Deschamps. Doc. 63. Defendants also ask to stay discovery pending decision on the dispositive motions for summary judgment on both Plaintiff Deschamps's and Plaintiff Henry Gonzales's claims. Doc. 40. Both Plaintiffs filed responses on the merits to the motions for summary judgment, but also contend that the Court should stay its decision on the motions for summary judgment pending certain discovery they contend is necessary to decision on the motions. Plaintiff Deschamps filed a Rule 56(d) request in which he asks the Court to defer ruling on the summary judgment motion pending additional discovery. Docs. 65 & 66. Plaintiff Gonzales has filed two motions to compel discovery. Docs. 42 & 58. The Court finds that neither Plaintiff seeks discovery relevant to Defendants' arguments for summary judgment. Therefore, the Court grants the motion for protective order and denies the Rule 56(d) request and the motions to compel, without prejudice to refiling the motions to compel if the motions for summary judgment are denied.

## DISCUSSION

        In their motion for a protective order and to stay, Defendants request (1) a protective

order deferring the noticed depositions of Kimberly Villanueva, H.C. Hawkins, and Alberta Lucero; (2) a protective order deferring responses to the written discovery Plaintiff Deschamps served on August 22, 2023; and (3) a stay of all discovery until dispositive motions are decided. Doc. 63 at 1. Defendants argue that favorable rulings on the motions for summary judgment would terminate the case and preclude the need for further discovery; the parties have a different view of what issues are relevant to the pending claims, which could make the depositions unduly complicated; and that Defendants have yet to file an answer and/or to plead their affirmative defenses to any of Plaintiffs' three complaints. Doc. 63 at 2. In response to the motion for protective order, Plaintiff Deschamps makes a Rule 56(d) request for discovery and attaches an affidavit, identifying discovery he argues is necessary to resolve the motion for summary judgment on his claims. Docs. 66 & 66-1.

Similarly, in their opposition to Plaintiff Gonzales's second motion to compel, on grounds that the discovery sought is irrelevant to consideration of the pending motions for summary judgment, Defendants ask the Court to defer ruling on the motion to compel until after the motions for summary judgment are decided. Doc. 64 at 4.[1] In reply, Plaintiff Gonzales argues that the discovery is relevant and necessary for his summary judgment opposition. Doc. 74 at 9. He does not specifically cite Federal Rule of Civil Procedure 56(d), but in arguing relevancy, he implicitly invokes that rule. In deciding whether to permit the discovery at issue, the Court will first set forth the legal standard. It will then discuss the discovery Plaintiff Deschamps and Plaintiff Gonzales request.

The Court concludes the requested discovery is not relevant to the arguments raised in

---

[1] Defendants do not make the same request in opposition to Plaintiff Gonzales's first motion to compel. Docs. 42, 46 & 54. However, the same logic regarding the possible unnecessary expenditure of resources applies to deferring ruling on both motions.

summary judgment. Furthermore, both Plaintiffs have fully responded to the motions for summary judgment on the merits, and the undersigned finds insufficient justification to defer decision on those motions. If the presiding judge determines that any of the requested evidence is relevant to the pending summary judgment motions, the presiding judge can deny summary judgment or allow discovery before deciding the motions.

A. Legal Standard

Rule 56(d) permits the Court to defer consideration of or deny a motion for summary judgment if Plaintiffs need discovery essential to their opposition. Fed. R. Civ. P. 56(d). This necessarily means that Plaintiffs must show how additional facts sought in discovery will enable them to rebut the motion for summary judgment. *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010). The moving "party must demonstrate precisely how additional discovery will lead to a genuine issue of material fact." *Ben Ezra, Weinstein, & Co., Inc., v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000).

Furthermore, outside the context of Rule 56(d), the Court has broad discretion to stay proceedings or issue a protective order incident to its power to manage its docket. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Baca v. Berry*, 806 F.3d 1262, 1269 (10th Cir. 2015) ("the district court has the power to stay proceedings before it and to control its docket for the purpose of economy of time and effort for itself, for counsel, and for litigants"); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) ("Discovery and scheduling are matters within the district court's broad discretion."); *King v. PA Consulting Group, Inc.*, 485 F.3d 577, 591 (10th Cir. 2007) (the court has broad discretion to manage the progression of discovery).

It is generally appropriate for a court to stay discovery until a pending dispositive motion is decided where "the case is likely to be finally concluded as a result of the ruling thereon; where the facts sought through uncompleted discovery would not affect the resolution of the

motion; or where discovery on all issues of the broad complaint would be wasteful and burdensome." *Wolf v. United States*, 157 F.R.D. 494, 495 (D. Kan. 1994). The first and third factors are not at issue here (the motions for summary judgment would be dispositive if granted, and discovery on all issues of the complaint would be burdensome given the potential for the motions to narrow the issues in the case). The Court thus turns to the question under both Rule 56(d) and the second factor of this test: whether the discovery sought is relevant and necessary for Plaintiffs' opposition to the motions for summary judgment.

B.  Plaintiff Deschamps

Plaintiff Deschamps was employed by NMBHI as a Recreational Therapist Operational at the Juniper One Unit at the time of his termination. Doc. 60 at 3. On November 23, 2019, Plaintiff Deschamps left a patient unattended while he answered a phone call that lasted 7 or 8 minutes. Doc. 60 at 4; Doc. 65-1 at 1. While Plaintiff Deschamps was out of the room, the patient ate several handfuls of cookies from a snack cart and choked to death. Doc. 60 at 4.[2] Following an investigation, on February 3, 2020, NMBHI advised Plaintiff Deschamps, through a Notice of Contemplated Action letter, that it was proposing his termination. Doc. 60 at 4; Doc. 65 at 12. NMBHI then issued a Notice of Final Action upholding the termination decision. Doc. 60 at 5. Plaintiff Deschamps did not exercise his statutory right to appeal the decision to the State Personnel Board; nor did he pursue a hearing before a union arbitrator, although he could have, as a member of the bargaining unit. Doc. 60 at 5; Doc. 65 at 18.

In his Rule 56(d) request, Plaintiff Deschamps outlines two broad categories of evidence he contends are relevant to Defendants' summary judgment motion. The Court considers each in

---

[2] Plaintiff disputes a variety of matters related to his termination, but does not dispute these basic facts. Doc. 65 at 2-12.

turn.

1. Policies and employee handbook

The first category of evidence for which Plaintiff Deschamps seeks discovery involves Defendants' employment handbook and policies. Doc. 66-1 at 2. Plaintiff Deschamps argues these are relevant because "all policies of the employer are potential terms of the involved implied contract." Doc. 66-1 at 2. Although internal policies could be relevant to the substance of Plaintiff Deschamps's breach-of-contract claims, Defendants' summary judgment motion does not implicate the substance of these claims. Defendants' motion for summary judgment contends that Plaintiff Deschamps had an obligation to exhaust administrative remedies for a breach of contract claim. Doc. 60 at 7-8. This exhaustion requirement is statutory, not contractual, and does not implicate consideration of whether a contract existed or, if it did, the substance of that contract. *See* Doc. 21 at 6 (outlining the statutory exhaustion requirement).

In short, Plaintiff Deschamps simply contends he did not receive adequate pre-termination process while Defendants claim he did. This dispute does not appear to turn on the content of internal employment policies. Plaintiff Deschamps does not explain how an employee handbook or internal policies bear on the statutory requirement that Plaintiff Deschamps exhaust administrative remedies. Nor does Plaintiff Deschamps explain how such discovery would answer questions as to adequacy of the pre-termination process afforded under the relevant statute and case law. That is, even assuming Defendants' employee policies established an implied contract, the content of these policies does not bear on exhaustion—the issue raised in Defendants' motion for summary judgment.

2. Comparator evidence

Second, Plaintiff Deschamps seeks evidence relating to (1) other employees who were responsible for the lack of supervision over the deceased patient; and (2) violation of policies by

5

other employees who were not terminated. Doc. 66-1 at 2-5. Although comparator evidence establishing differential treatment could be relevant to certain elements of a Whistleblower Protection Act ("WPA") claim, it does not appear to relate to the defense actually raised in the motion for summary judgment. Nor does Plaintiff Deschamps supply such a connection. In the motion, Defendants argued that Plaintiff Deschamps did not engage in protected activity under the WPA. Doc. 60 at 11-14. Plaintiff Deschamps vigorously disagrees. Comparator evidence, however, is not relevant to this disagreement over whether Plaintiff Deschamps engaged in protected activity.

    C.    <u>Plaintiff Gonzales</u>

Plaintiff Gonzales was employed by the New Mexico Department of Health d/b/a New Mexico Behavioral Health Institute ("NMBHI") as a Psychiatric Technician/Supervisor at NMBHI from 2017 to February 23, 2021. Doc. 41 at 3; Doc. 44 at 4. According to Defendants, Plaintiff Gonzales was Absent Without Leave ("AWOL") on August 27, 2020; September 4, 2020; and September 15, 2020. Doc. 44 at 5; Doc. 44-1 at 9. On October 16, 2020, Plaintiff Gonzales applied for FMLA leave, and Plaintiff Gonzales asserts it is unclear what date this FMLA leave period was supposed to expire (January 5, 2021 or April 2021). Doc. 44 at 7-8; Doc. 44-1 at 5. On January 6, 2021, Plaintiff Gonzales was asked to work a "mandated overtime shift" but was unable to stay because he had to leave to take his son to the airport. Doc. 41 at 17 (affidavit of Harry C. Hawkins).[3] Plaintiff Gonzales contends that he was told he could not take

---

[3] The evidence is that Plaintiff Gonzales took leave to take his son to the Air Force base in Albuquerque, not the "airport." Doc. 41 at 54 (Plaintiff Gonzales's handwritten statement asserting that he could not work the overtime because he had to take his son to Albuquerque to "get things ready for him to leave to the military"); Doc. 44-1 (Plaintiff Gonzales's affidavit stating he had to "move my son into the Air Force Barracks at Kirtland Air Force Base on January 6, 2021"). This difference does not appear to be material to Defendants' argument.

FMLA leave because his FMLA leave had been exceeded. Doc. 44-1 at 15.

Plaintiff Gonzales received a letter of proposed termination on February 5, 2021, for failing to work a mandated overtime shift and because he had been AWOL four times within a 12-month period. Doc. 41 at 3. Plaintiff Gonzales was given an opportunity to respond to the Notice of Contemplated Action before his termination. A letter from his attorney was considered but, according to Defendants, did not provide a basis to change the proposed action. Doc. 44 at 3.[4] Accordingly, NMBHI terminated Plaintiff Gonzales's employment on February 23, 2021. Doc. 44-1 at 15.

After dismissing many of his claims in his response to the motion for summary judgment, Plaintiff Gonzales has two claims remaining in this case: (1) the FMLA interference claim; and (2) the federal and state claims for disability discrimination. *Id.* On the first claim, Defendants' motion for summary judgment argues Plaintiff Gonzales was fired for being absent without leave on January 6, 2021. Doc. 41 at 11. This cannot give rise to an FMLA interference claim, Defendants argue, because the purpose of the leave on January 6 was to drive Plaintiff Gonzales's son to the airport. Since this is not an eligible FLMA purpose, Defendants argue, Plaintiff Gonzales has no valid FMLA claim, whether based on interference or otherwise. Doc. 41 at 11-12.

On the second claim, Defendants' motion argues that Plaintiff Gonzales cannot claim disability discrimination because Plaintiff Gonzales is not disabled for the purposes of an ADA or state-law claim. Doc. 41 at 9-10. An individual is not disabled if that individual can work 40

---

[4] Plaintiff Gonzales disputes that he should have been considered AWOL on these days, but he does not dispute Defendant's allegations that he received a letter stating he had been AWOL; that he was given an opportunity to respond; and that Defendant NMBHI did not change its proposed action after reviewing the letter from his attorney. Doc. 44 at 5-10.

hours a week, Defendants argue, and Plaintiff Gonzales's doctor submitted a form stating he can work 48 hours a week. *Id.* That is, Plaintiff Gonzales cannot bring a claim for failure to accommodate a disability where no disability exists.

In his motions to compel, Plaintiff Gonzales seeks discovery on:

- the identities of the NMBHI personnel who determined the kind of leave Plaintiff Gonzales used to justify his absences from scheduled and requested shifts (Doc. 42 at 8);

- policies that potentially form a contractual relationship between Defendants and their employees (Doc. 42 at 9);

- records of Plaintiff Gonzales's compensation for his work at NMBHI for the last four years of his employment (Doc. 42 at 9-10);

- all emails between any two of the three individual defendants and/or Plaintiff Gonzales (Doc. 42 at 10);

- work schedules for all Psychiatric Technician employees for eighteen months, close in time to Plaintiff Gonzales's termination (Doc. 42 at 10-11);

- Plaintiff Gonzales's leave designations and leave calculations for two years before his termination (Doc. 42 at 11);

- policies and work schedules for the M.D. Psychiatric Interns regularly working days-long shifts at NMBHI during calendar years 2020 and 2021(Doc. 42 at 11-12);

- personnel files of the individual defendants (Doc. 42 at 17);

- documents recording or comprising the training of the individual defendants (Doc. 42 at 17);

- employee complaints regarding the behavior of the individual defendants related to the specific statutes alleged violated herein (Doc. 42 at 18);

- Patient Incident Reports at the Tesuque Unit for four years prior to Plaintiff Gonzales's termination (Doc. 42 at 18);

- complaints about the lack of staffing at the Tesuque Unit for the four years prior to Plaintiff Gonzales's termination (Doc. 42 at 19);[*]

- digital time-clock records, and pay records arising from work at the Tesuque Unit for the 18 months prior to Plaintiff Gonzales's termination (Doc. 42 at 19);

- Tesuque Unit Overtime Expense Ledgers for the four years prior to Plaintiff Gonzales's termination (Doc. 42 at 20);[*]

- all allegations of wrongful terminations made Facility-wide from 2018 through the present (Doc. 42 at 24-25);[*]

- all lawsuits, court actions, and administrative actions involving the relevant statutory claims in this case (Doc. 42 at 25-26);

- the identities and contact information for all Psych Tech and Psych Tech supervisors who Defendant suspended or terminated (Doc. 42 at 26-27);

- the identities and contact information for all Psych Tech and Psych Tech supervisors who Defendant suspended or terminated (Doc. 42 at 27);

- all versions of Plaintiff Gonzales's October 16, 2020 Family Medical Leave Request (Doc. 58 at 1-2);

- published job listings and job descriptions for open positions at NMBHI (Doc. 58 at 2);

- documents recording NMBHI's consideration of Plaintiff Gonzales working Psych Tech duties at the Tesuque Unit, as opposed to his Psych Tech Supervisor position (Doc. 58 at 2);

- floor plans, maps, plats or blueprint documents for the "Tesuque Unit," the "Long-Term Care Unit," and the "Assisted Living Facility Unit aka ALF or Arches" (Doc. 58 at 2).

None of these discovery requests pertain to the arguments Defendants raised in the motion for summary judgment. For example, Plaintiff Gonzales seeks discovery showing that his request for accommodation was reasonable and that he could have worked other positions with NMBHI. But in seeking summary judgment, Defendants argued that Plaintiff Gonzales is not disabled, so the duty to accommodate did not arise. Whether NMBHI could have reasonably accommodated Plaintiff Gonzales is not relevant to Defendant's summary judgment argument that they had no legal duty to accommodate Plaintiff Gonzales. Similarly, Plaintiff Gonzales

---

[*] Plaintiff dropped these requests in his reply brief.

seeks discovery regarding the period for which Plaintiff Gonzales requested FMLA leave, an accurate version of his FMLA request form, and who decided he was not permitted to take FMLA, annual, or sick leave on the dates he was AWOL. None of this is relevant to Defendant's argument that the FMLA is not implicated by Plaintiff Gonzales's termination. Indeed, because Defendants' arguments rise or fall on the basis of purely legal assertions (someone who can work over 40 hours a week is not disabled; Plaintiff Gonzales was not entitled to FMLA leave for the purpose of taking his son to the airport), it does not appear that the requested discovery would be relevant to these arguments.

      Furthermore, some discovery requests at issue in the motions to compel pertain to claims that Plaintiff Gonzales subsequently agreed to dismiss. For example, Plaintiff Gonzales moves to compel a complete response to Request for Production No, 6, and explains: "The Request for Production requests all DOH and NMBHI policies governing Plaintiff Gonzales' work place, including Human Resources and other Administrative Guides. Issues like the one described above related to Interrogatory No. 11. These policies are all part of the contractual relationship NMBHI has with its employees, are -- at a minimum – potentially terms of that contract." Doc. 42 at 9. But Defendants argued in the motion for summary judgment that Plaintiff Gonzales had failed to exhaust administrative remedies and therefore could not bring any contract-based claims. Doc. 41 at 2. In response, Plaintiff Gonzales agreed to dismiss his breach of contract claim. Doc. 44 at 1. Thus, even if Defendants' motion for summary judgment is denied, Plaintiff Gonzales's present motions to compel are not tailored to the remaining scope of the case.

      Accordingly, because Plaintiff Gonzales's claims changed in response to the summary judgment briefing and may change again depending on the summary judgment ruling, the Court denies the motions to compel without prejudice. If the Court denies summary judgment, the

Court will permit Plaintiff Gonzales to refile the motions, but reminds both parties that they are required to engage in a meet and confer process that considers the altered scope of the case after summary judgment proceedings. Finally, if the Court resolves any such motions to compel in Plaintiff Gonzales's favor, the Court will hold a status conference to reset any necessary case management deadlines.

## CONCLUSION

THEREFORE, IT IS ORDERED THAT

1. Defendants' Motion For Protective Order To Defer Scheduled Depositions And Written Discovery, Doc. 62, is GRANTED;

2. Plaintiff Henry Gonzales' Motion To Compel Supplemental Answers And Responses From NMDOH dba NMBHI Defendant Pursuant [sic] Plaintiff Gonzales' First Set Of Written Discovery And For Entry Of The Attached Protective Order Agreed To By The Parties, Doc. 42, is DENIED;

3. Plaintiff Henry Gonzales' Motion To Compel Supplemental Answers And Responses From NMDOH dba NMBHI Defendant Pursuant [sic] Plaintiff Gonzales' Second Set Of Written Discovery, Doc. 58, is DENIED; and

4. All discovery is stayed pending decisions on the motions for summary judgment (Docs. 40 & 59).

SO ORDERED.

_____
UNITED STATES MAGISTRATE JUDGE