IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HENRY GONZALES,

      Plaintiff,

v.   No. 1:22-CV-00525-WJ-SCY

NEW MEXICO DEPARTMENT OF HEALTH dba
NEW MEXICO BEHAVIORAL HEALTH
INSTITUTE, SUSIE ARCHULETA,
JEREMY GONZALES, RICHARD VIGIL,
HARRY HAWKINS, ALBERTA LUCERO,
and KIMBERLY VILLANUEVA

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF HENRY GONZALES' CLAIMS

**THIS MATTER** is before the Court on Defendants' Motion for a More Definite Statement (**Doc. 31**) and Defendants' Motion for Summary Judgment on Plaintiff Henry Gonzales' Claims (**Doc. 40**). With respect to Defendants' Motion for a More Definite Statement, Defendants filed two motions for summary judgment based on Plaintiff's Second Amended Complaint, indicating that Defendants could reasonably prepare a responsive pleading to the Second Amended Complaint. Consequently, Defendants' Motion for a More Definite Statement (**Doc. 31**) is **DENIED** as **MOOT**. In Defendants' Motion for Summary Judgment (**Doc. 40**), Kimberly Villanueva, Harry Hawkins, Alberta Lucero, and the New Mexico Behavioral Health Institute (collectively Defendants) ask the Court to dismiss all Plaintiff Gonzales' remaining claims against them. Having considered the parties' briefing and the applicable law, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment (**Doc. 40**).

1

## BACKGROUND [1]

This case involves Defendant New Mexico Behavioral Health Institute's ("NMBHI") termination of Plaintiff Henry Gonzales after he refused to work a mandatory overtime on January 6, 2021. Defendant NMBHI is a state-operated facility that, in addition to other services, "houses and cares for individuals who need varying levels of supervised care because they cannot care for themselves due to physical or mental conditions." **Doc. 41 at 2**. Plaintiff Gonzales' worked as Psychiatric Technician/Supervisor at NMBHI from 2017 to February 23, 2021. *Id. at 3*.

At the time of Plaintiff's termination, NMBHI had the following policies and practices. NMBHI required employees to work mandatory overtime. In fact, one of the essential functions of a Psychiatrist Technician Supervisor is the ability to work overtime hours. **Doc. 41 at 23, 26**. To fill overtime shifts, supervisors followed a process where they initially sought out on-site volunteers, then turned to an off-site volunteer call list. **Doc. 41 at 6**. If supervisors could not find volunteers through these means, they turned to the mandatory overtime list. *Id.*

The mandatory overtime list was a rotating list where the first three names on the list were required to work a mandatory overtime shift. **Doc. 41 at 30**. The names on the list were posted within three hours of each shift. *Id.* Within 6-hours after the beginning of the shift, supervisors had to make a good faith effort to notify those employees who would likely be required to work mandatory overtime. *Id.* To be moved to the bottom of the mandatory overtime list, an employee had to complete four or more hours of overtime. *Id.*

---

[1] The Court takes the background facts from the parties' briefs and are supported by evidence in the record as stated by the parties. The background facts are either undisputed, or, where genuinely disputed, are viewed in the light most favorable to Plaintiff, the party opposing the grant of summary judgment. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 964 (10th Cir. 2022). Additionally, the parties raised materiality/relevancy objections to each other's facts. The facts included here have been deemed to be material by the Court and are not disputed *unless otherwise noted*.

NMBHI also had a progressive system of sanctions, where it would count the number of absences without leave ("AWOLS") during a 12-month period preceding the date of the most recent violation. **Doc. 41 at 44**. Four AWOLS in a 12- month period resulted in dismissal. *Id.* Under NMBHI policy, an employee is considered AWOL when he or she (1) leaves while on duty without authorization, (2) fails to follow proper call-in procedures, (3) fails to report to work within the first hour of their assigned work schedule, or (4) *fails or refuses to work an overtime assignment without authorization.* **Doc. 41 at 43**.

According to NMBHI policy, employees could avoid AWOLs by using their annual and sick leave. **Doc. 41 at 36, 39**. However, employees were required to request leave in advance, except for unanticipated medical conditions, illnesses, or other emergencies, by completing the appropriate application for leave and submitting it to their supervisor. **Doc. 41 at 36**.

In January 2018, Plaintiff underwent knee surgery. **Doc. 44-1 at 22, 45**. While Plaintiff recovered from his knee surgery, he was placed on so-called intermittent FMLA, which allowed him to use unpaid FMLA leave to attend on-going medical appointments and rest and recover when flare-ups occurred. **Doc. 44-1 at 22**.

In June 2020, Plaintiff transferred from the Arches Unit to the Tesuque Unit and began work on or about July 1, 2020. *Id*. In July 2020, Defendant Kimberly Villanueva, the Human Resources FMLA Administrator at NMBHI, spoke with Plaintiff and began working on Plaintiff's FMLA application**. Doc. 44-1 at 23, 42**. Plaintiff's FMLA application stated that he was eligible for FMLA but needed to submit a Certificate of Serious Health Condition from his doctor or his leave may be denied. **Doc. 44-1 at 42**. Plaintiff did not submit the Certificate of Serious Health Condition until October 9, 2021. **Doc. 44-1 at 74**; **Doc. 44-1 at 70**. Doctor Frank Gallegos of Buena Salud Family Medicine filled out Plaintiff's Certificate of Serious Health Condition on

October 6, 2020. **Doc. 44-1 at 47**. In this certificate, Doctor Gallegos described Plaintiff's condition.

> [l]eft knee chronic pain with patellofemoral degenerative changes with exacerbation of pain with stress on the knee from prolonged weight bearing now with left heel pain attributed to brace on the knee, limping, and prolonged weight bearing favoring the knee. Can not work no more than 48 hours a week.

**Doc. 44-1 at 45**. When asked about the duration of Plaintiff's conditions, Doctor Gallegos wrote "6 or more months and then reevaluate." *Id.*

On October 29, 2020, Plaintiff received a Notice of Proposed Suspension for being AWOL on August 27, September 4, and September 15 of 2020. **Doc. 41 at 53**. On these dates, supervisors asked Plaintiff to work mandatory overtime shifts from 3:00 p.m. to 11:00 p.m., and Plaintiff refused. *Id.* **at 51**. Significantly, Plaintiff was ineligible for FMLA during these AWOLs as he had not yet submitted his Certificate of Serious Health Condition. **Doc. 44-1 at 70**. NMBHI ultimately suspended Plaintiff for these AWOLs from November 14 to November 20, 2020. **Doc. 41 at 51.**

After Plaintiff's suspension, he completed and submitted his required forms for his FMLA application and was approved for intermittent FMLA leave starting on October 9, 2020.[2] **Doc. 44-1 at 68**. On January 6, 2021, a supervisor again asked Plaintiff to work a mandatory overtime shift. **Doc. 41 at 54**. Plaintiff refused to work the shift because he had to drive his son to Albuquerque. *Id.* On February 5, 2021, Plaintiff received a Letter of Proposed Termination for failing to work a mandatory overtime shift on January 6, 2021, and accruing four AWOLs within a 12-month period. *Id.* **at 32**

---

[2] The parties disagree on Plaintiff's FMLA end date. While Plaintiff asserts that his FMLA should have extended until April 4, 2021, Defendants contend that the FMLA leave lasted until January 6, 2021. The Court acknowledges this dispute but deems it immaterial. This is because, irrespective of whether Plaintiff had FMLA on or past January 6, 2021, he was not entitled to use it for a non-medical absence. Consequently, Plaintiff could not have applied FMLA to account for his absence on January 6, 2021, regardless of his FMLA status.

Plaintiff's attorney responded to the Letter of Proposed Termination. **Doc. 44-1 at 31**. Defendants considered Plaintiff's response but did not think that it provided a basis to change the proposed action. **Doc. 41 at 17**. Plaintiff received a Notice of Final Action, terminating him from his employment on February 23, 2021. *Id.* **at 55**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, but once the movant has done so, the burden shifts to the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022). The movant may satisfy its initial burden by producing affirmative evidence negating an essential element of the non-movant's claim. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). In opposing summary judgment, the non-movant cannot rest on mere allegations but "must bring forward specific facts showing a genuine issue for trial." *Kannady*, 590 F.3d at 1169 (internal quotation marks omitted). "The summary judgment standard requires [the Court] to construe the facts in the light most favorable to the non-movant and to draw all reasonable inferences in its favor." *Beauford*, 35 F.4th at 1261. (citing *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021)). The Court's function at this stage "is not . . . to weigh the evidence and determine

the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. However, the Court need not accept allegations contradicted by objective evidence. *Beauford*, 35 F.4th at 1261 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## **DISCUSSION**

Plaintiff asserts the following claims against Defendants: (1) breach of contract; (2) violation of procedural due process under 42 U.S.C. § 1983; (3) violation of the First Amendment under § 1983; (3) violation of the Equal Protection Clause under § 1983; (5) violation of the New Mexico Human Rights Act ("NMHRA"); (6) violation of the Americans with Disabilities Act ("ADA"); and (7) interference under the Family and Medical Leave Act ("FMLA"). **Doc. 30 at 36–51**. In Plaintiff's Response, he agreed to dismiss all his claims against Defendants except his claims under the ADA, NMHRA, and FMLA. **Doc. 44 at 1**. The Court addresses Plaintiff's remaining claims below.

**I.   Plaintiff's ADA and NMHRA claims:**

Defendant NMBHI seeks summary judgment on Plaintiff's ADA and NMHRA claims.[3] In Plaintiff's response, he clarifies that his ADA and NMHRA claims are failure to accommodate claims. **Doc. 44 at 13–15.** To establish a prima facie case of failure to accommodate under the ADA, Plaintiff "must make an initial showing that (1) he is disabled, (2) he is otherwise qualified, and (3) he requested a reasonable accommodation. *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 992 (10th Cir. 2021) (citing *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017).

Defendant NMBHI argues that Plaintiff cannot show that he was "disabled" under the ADA during his employment at NMBHI. **Doc. 41 at 9**. An individual is disabled under the ADA if they suffer from an impairment that "substantially limits the ability of an individual to perform a major

---

[3] Plaintiff only asserts ADA and NMHRA claims against Defendant NMBHI.

6

life activity as compared to most people in the general population." 29 C.F.R. § 1630.2. While there is no dispute that Plaintiff suffered from an impairment, patellofemoral changes in his left knee, Defendant NMBHI argues that Plaintiff cannot show that this impairment "substantially limited a major life activity." **Doc. 41 at 9**. To bolster this argument, Defendant NMBHI emphasizes that Doctor Gallegos certified that Plaintiff could work 48 hours a week and cites a string of cases apparently establishing that an individual capable of working 40 hours or more is not considered disabled as a matter of law. **Doc. 41 at 9–10**.[4] The Court identifies two flaws with the cases cited by Defendant NMBHI, rendering them unpersuasive in the present case. First, these cases involve plaintiffs who allege that their impairments substantially limit their capacity to work. That is not the case here. Plaintiff asserts that his impairment – patellofemoral changes in his left knee – substantially limited his standing and walking not his capacity to work.[5] **Doc. 44 at 19**. Second, these cases precede the ADA Amendments Act, "which was designed to reinstate a broad scope of protection to be available under the ADA." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019) (internal citation omitted). In other words, the cases referenced by Defendant NMBHI apply a narrower definition of "disability" under the ADA than what currently exists.

Congress passed the ADA Amendments Act in 2008 to, among other things, reverse the narrow judicial interpretation of disability articulated in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999). *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 545, n.16 (10th Cir. 2014). As a

---

[4] Defendant cites the following cases for the proposition that an individual who is capable of working 40 hours a week or more is not considered disabled as a matter of law:  *Taylor v. Nimrock's Oil Co.*, 214 F.3d 957, 961 (8th Cir. 2000) *Berg v. Norand Corp.*, 169 F.3d 1140, 1145 (8th Cir. 1999*; Tardiev. Rehabilitation Hosp. of Rhode Island*, 168 F.3d 538, 542 (8th Cir. 1999); *Parkinson v. Anne Arundel Med. Ctr., Inc.*, 214 F.Supp.2d 511, 515 (D. Md. 2002); *Nichols v. Scott Lowery Law Office, P.C.*, 2010 WL 124320 at *4 (N.D. Okla. 2010). **Doc. 41 at 9–10**.
[5] The ADA explicitly lists standing and walking as "major life activities." 29 C.F.R. § 1630.2.

7

result, the ADA Amendments Act directed courts to interpret "substantially limits" broadly and in favor of expansive coverage. *Id.*

The post-ADA Amendments Act regulations provide instructions on how to construe the phrase "substantially limits" and similarly caution that the phrase is not meant to be a demanding standard. 29 C.F.R. § 1630.2(j). The regulations instruct courts that the phrase "substantially limits" shall be construed broadly in favor of expansive coverage, to the "maximum extent permitted by the ADA;" and shall "be applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." § 1630.2(i)(iv). Additionally, under these regulations, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." § 1630.2(j)(ii). Instead, the key consideration is whether a disability "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." § 1630.2(j)(ii)

Taking into account the changes introduced by the ADA Amendments Act, the Court shifts its focus back to the present case. Plaintiff can survive Defendant NMBHI's summary judgment motion by showing that a reasonable jury could find that his impairment substantially limited his ability to stand and walk as compared to most people in the general population. While the evidence regarding the impact of Plaintiff's patellofemoral changes in his left knee on his ability to stand and walk is not overwhelming, there is evidence that Plaintiff, while employed at NMBHI, limped when he walked, wore a knee brace, and suffered from chronic pain that was exacerbated by weight bearing (i.e., standing and walking). **Doc. 44-1 at 45.** In light of this evidence and the ADA Amendment Act's preference to construe the phrase "substantially limits" broadly, a reasonable jury could find that Plaintiff's impairment, substantially limited his ability to stand and walk as

8

compared to most people in the general population. As a result, Defendant NMBHI is not entitled to summary judgment on Plaintiff's ADA claim.

Likewise, Defendant NMBHI is not entitled to summary judgment on Plaintiff's NMHRA claim. The NMHRA provides that it is an unlawful discriminatory practice for "any employer to refuse or fail to accommodate a person's physical or mental disability, unless such accommodation is unreasonable or an undue hardship." NMSA 1978, § 28–1–7(J). Defendant NMBHI argues that Plaintiff did not have a disability under the NMHRA for the same reasons it argues that he did not have a disability under the ADA. **Doc. 41 at 9**. However, if a reasonable jury could find that Plaintiff had a disability under the ADA, it could also find that Plaintiff had a disability under the NMHRA, as the NMHRA uses the same definition of disability as the ADA. *Compare* NMSA 1978, § 28-1-2(O) (defining a physical or mental disability under the NMHRA as a physical or mental impairment that substantially limits one or more of a person's major life activities), *with*, 42 U.S.C. § 12102(1) (defining a disability under the ADA as a physical or mental impairment that substantially limits one or more major life activity).[6]

Given that a reasonable jury could find that Plaintiff had a disability under the ADA and NMHRA while he was employed at NMBHI, Defendant NMBHI is not entitled to summary judgment on these claims.

## II. Plaintiff's FMLA interference claims:

Defendants also seek summary judgment on Plaintiff's FMLA interference claims. **Doc. 41 at 11–12; Doc. 52 at 4 – 5**. There are two causes of action under the FMLA – retaliation and interference. *Dalpiaz v. Carbon Cnty.*, 760 F.3d 1126, 1131 (10th Cir. 2014). Plaintiff dismissed

---

[6] The New Mexico Supreme Court has instructed that in interpreting the NMHRA, "it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the Act." *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 8, 131 N.M. 607, 41 P.3d 333.

his retaliation claim against Defendants but maintains his interference claims. **Doc. 44 at 1**. To prevail on an FMLA interference claim, Plaintiff must show (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights. *Id.* at 1132 (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)).

If a plaintiff can satisfy that the first two elements of an interference claim, the employer then must show that its adverse decision/action was not "related to the exercise or attempted exercise of [the employee's] FMLA rights." *Id.* Significantly, an employer need not establish that the employer's adverse action and the employee's FMLA request are completely and entirely unrelated to establish that its adverse action was not related to the exercise or attempted exercise of an employee's FMLA rights. *Id.*

In addition to proving the aforementioned elements, a plaintiff must also prove that he suffered prejudice as a result of a FMLA violation for his claim to be actionable. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (concluding that even when a plaintiff establishes a technical FMLA violation, the act provides no relief unless the employee is prejudiced by the violation). To show prejudice under the FMLA, a plaintiff must establish that he suffered a loss of income or incurred costs as a result of an alleged FMLA violation. *See Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1277 (10th Cir. 2001) (explaining that recovery under the FMLA is unambiguously limited to actual monetary losses).

Defendants contend that they are entitled to summary judgment on all Plaintiff's interference claims because Plaintiff failed to present evidence that any alleged interference with his rights under the FMLA caused his termination or any other compensable damages. **Doc. 52 at**

**4; Doc. 41 at 12 n. 6**. The Court agrees. To address the numerous and somewhat convoluted interference claims raised by Plaintiff, the Court categorizes the claims into two categories – claims based on termination and claims based on acts other than termination.

### A. Plaintiff's interference claims based on termination:

Plaintiff claims that Defendants interfered with his FMLA rights by terminating his employment after Plaintiff attempted to exercise his FMLA rights on January 6, 2021. **Doc. 44 at 1.** The Court disagrees, as no reasonable jury could conclude that Plaintiff's termination was related to the exercise or attempted exercise of his FMLA rights. The undisputed facts demonstrate that Plaintiff missed a mandatory overtime shift on January 6, 2021, to drive his son to Albuquerque. **Doc. 41 at 54**. This absence, not related to Plaintiff's medical condition, was not covered by his FMLA agreement or any other type of leave. **Doc. 44-1 at 43; Doc. 41 at 36**. The January 6 absence marked the fourth instance in a 12-month period where Plaintiff missed a mandatory overtime shift not covered by FMLA or any other leave. **Doc. 41 at 32, 51**. NMBHI policy designates such instances as AWOLs. *Id.* **at 43**. Four AWOLs in a 12-month period, according to NMBHI policy, leads to dismissal. *Id.* **at 44**. Thus, Plaintiff's termination was the result of non-compliance with NMBHI's AWOL and leave policies not his attempted exercise of his FMLA rights. Accordingly, summary judgment in favor of Defendants on this claim is warranted. Indeed, "if an employer presents evidence that an employee was dismissed for her failure to comply with the employer's absence-notification policy, this is sufficient to demonstrate the termination was not legally 'related to' the exercise of FMLA leave, even if the employee's absences were caused by a requested medical leave." *Dalpiaz*, 760 F.3d at 1132–33 (citing *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877–78 (10th Cir. 2004).[7]

---

[7] To the extent Plaintiff argues that Defendants interfered with his FMLA rights by suspending him, this claim fails for the same reasons his termination-based interference claim fails. Defendants demonstrated that Plaintiff's

**B. Plaintiff's interference claims based on acts other than termination:**

Plaintiff also asserts interference claims based on a variety of actions allegedly taken by Defendant other than termination, including failing to notify Plaintiff that he did not have FMLA leave from July 2020 to October 2020, failing to give him a required designation notice, forcing him to work more than 48 hours, failing to properly calculate his FMLA leave usage, failing to ever notify him of his on-going use of FMLA leave, suspending him, failing to document his performance of the FMLA agreement, and completing his FMLA application in an incomprehensible manner. **Doc. 44 at 1–2**. Even if Plaintiff could show that these actions amounted to interference, these claims are not actionable because there is no evidence demonstrating that Plaintiff sustained any actual monetary losses as a result of these actions. To start, Plaintiff is not entitled to any actual monetary losses resulting from his termination as he would have been fired regardless of whether he exercised or attempted to exercise his FMLA rights. Moreover, there is no other evidence demonstrating that Plaintiff sustained any other actual monetary losses as a result of any of Defendants' alleged FMLA interferences. As Plaintiff is not entitled to actual monetary losses arising from his termination and there is no evidence demonstrating other actual monetary losses incurred by Plaintiff, summary judgment in favor of Defendants is warranted on all Plaintiff's remaining FMLA claims.

## CONCLUSION

The Court **DENIES** Defendants' Motion for a more Definite Statement (**Doc. 31**) as **MOOT** and **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment on Plaintiff Gonzales' claims (**Doc. 40**). The Court **DENIES** summary judgment on Plaintiff's ADA and NMHRA claims and **GRANTS** summary judgment in favor of Defendant on Plaintiff's

---

suspension occurred due to Plaintiff's non-compliance with NMBHI's AWOL and leave policies not his exercise or attempted exercise of his FMLA rights.

FMLA claims. Additionally, Plaintiff agreed, in his response, to dismiss his breach of contract claims, his § 1983 claims, and his FMLA retaliation claims. **Doc. 44 at 1**. The Court therefore dismisses these claims consistent with Plaintiff's concessions.

    **IT IS SO ORDERED.**

                                                               CHIEF UNITED STATES DISTRICT JUDGE